

**SECRET**

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA**,<br><br>        Plaintiff,<br><br>v.<br><br>**FRANKLIN D. HUGGINS**<br>[DOB: 05/13/1968],<br><br>        Defendant. | No. 21-3139-01-CR-S-SRB<br><br>**COUNT 1:**<br>(Wire Fraud Conspiracy)<br>18 U.S.C. §§ 1343 and 1349<br>NMT 20 Years Imprisonment<br>NMT $250,000 Fine<br>NMT 3 Years Supervised Release<br>Class C Felony<br><br>**COUNT 2:**<br>(Money Laundering Conspiracy)<br>18 U.S.C. § 1956(h)<br>NMT 20 Years Imprisonment<br>NMT $500,000 Fine or twice the value of the property involved in the transaction<br>NMT 3 Years Supervised Release<br>Class C Felony<br><br>**FORFEITURE ALLEGATIONS:**<br>18 U.S.C. §§ 981(a)(1), 982(a); 28 U.S.C. § 2461; 21 U.S.C. § 853<br><br>**Restitution**<br><br>$100 Special Assessment (per each felony count of conviction) |

## I N D I C T M E N T

**THE GRAND JURY CHARGES THAT:**

## GENERAL ALLEGATIONS

At all times relevant to this Indictment:

1.    The defendant, **FRANKLIN D. HUGGINS**, was a resident of Citrus County, Florida, a location in the Middle District of Florida.

1

2. The defendant opened and had signatory power over the following bank accounts, among others:

    a. SunTrust Bank accounts under his name, numbers XX5812 and XX2355; and

    b. JP Morgan Chase accounts under his name, numbers XX6232 and XX1030.

3. Beginning on an unknown date, but at least as early as January 1, 2017, and continuing through at least January 28, 2019, said dates being approximate, the defendant, **FRANKLIN D. HUGGINS**, participated in a wire fraud and money laundering conspiracy targeting people, businesses, and the United States through a business email compromise scheme. In a business email compromise scheme, the conspirators hack into a business email account, and then send an email from what appears to be an employee of such business with authority to engage in financial matters, instructing that money be sent to certain bank accounts.

4. The perpetrators and conspirators of this scheme sent emails to individuals associated with businesses in an attempt to gain unlawful access to business email accounts. After gaining access to such email accounts, the conspirators then utilized the business email accounts to portray themselves as the businesses and individuals represented. Under such assumed identities, the conspirators would then engage in what seemed to be normal financial transactions with other victim businesses, individuals, and entities, requesting money for certain purposes. These victim businesses, individuals, and entities, believing they were conducting business with the real individuals and not the conspirators, sent money to the conspirators based upon those false representations.

2

Case 6:21-cr-03139-SRB   Document 1   Filed 11/16/21   Page 2 of 12

5. In furtherance of the scheme and conspiracy, the defendant opened and maintained a series of bank accounts under his name and control. Victims, following the directions of unknown co-conspirators, wired or deposited money into the accounts established by the defendant, several such transfers occurring electronically and crossing from one state to another. Upon receipt of the money, the defendant utilized some of the proceeds for his own benefit and transferred some of the proceeds to other individuals through the use of MoneyGram, Western Union, and cashier's checks. Several of these transfers also occurred electronically and crossed from one state to another. At no time did the defendant utilize the proceeds for the purposes communicated to the victims.

6. The United States Army Directorate of Family and Morale, Welfare and Recreation manages programs and services that support the readiness and resilience for soldiers and families. Fort Leonard Wood is a United States Army training installation located within Pulaski County, Missouri, and is located in the Western District of Missouri. The Fort Leonard Wood Morale, Welfare and Recreation branch, hereinafter referred to as "Victim Number 3" or "V3," provided annual transportation for military service members during the winter holidays. Specifically, V3 would provide roundtrip bus transportation to airports for military service members to be with their families during the holidays.

7. Victim Number 1 ("V1") resided in Belle Meade, Tennessee, within the Middle District of Tennessee. Victim Number 2 ("V2") was a business headquartered in Boise, Idaho, within the District of Idaho. Business Number 3 ("B3") was a corporation headquartered in Caseyville, Illinois, within the Southern District of Illinois. B3 provided charter bus services to V3 during the 2018-2019 holiday season as a part of the Morale, Welfare and Recreation program.

## COUNT 1
## (Wire Fraud Conspiracy)

8.      The allegations contained in Paragraphs 1 through 7 and 10 through 25 of this Indictment are re-alleged and incorporated by reference as if fully set forth herein.

9.      Beginning on an unknown date, but at least as early as January 1, 2017, and continuing through at least January 28, 2019, said dates being approximate, in Pulaski County, within the Western District of Missouri, at a place within the special maritime and territorial jurisdiction of the United States, namely Fort Leonard Wood, on land acquired for the use of the United States and under its exclusive jurisdiction, and elsewhere, the defendant, **FRANKLIN D. HUGGINS**, and others, both known and unknown to the grand jury, did knowingly and willfully combine, conspire, confederate, and agree with each other to commit offenses against the United States, that is having devised and intending to devise a scheme for obtaining money by means of materially false and fraudulent pretenses, representations and promises, transmitted or caused to be transmitted by means of wire communications in interstate commerce writings, signs, and signals for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343.

### WAYS, MANNER, AND MEANS

10.     The ways, manner, and means by which the conspiracy was carried out included, but were not limited to the following:

11.     The purpose of the conspiracy was for the defendant, and others, both known and unknown to the grand jury, to enrich themselves and others by fraudulently obtaining and attempting to obtain money from the United States, and individuals and businesses throughout the

United States, through the unlawful gain of access and control of other individuals' and business' email accounts.

12. Unknown co-conspirators would target individuals and businesses through email, sending purportedly legitimate emails to their targets, in some cases representing that the target individual needed to commit an action related to the security or access of their email account, when in fact the true purpose of the email was to persuade the unwitting victims to commit such action that would actually allow the unknown co-conspirators to gain access to the email account. After gaining access to such email accounts, the co-conspirators then utilized the email accounts to portray themselves as the businesses and individuals represented to other individuals, businesses, and the United States. Under such assumed identities, the co-conspirators would then engage in what seemed to be normal financial transactions with other businesses and individuals, and the United States, requesting money for certain purposes. These victim individuals and entities, believing they were conducting business with the real individuals and not the co-conspirators, and believing they were engaging in a legitimate financial transaction for goods and services rendered, sent money to the co-conspirators based upon those false representations.

13. After the unknown co-conspirators obtained an agreement from the victims to send money, the co-conspirators would direct the victims to deposit or wire transfer money to certain bank accounts, including certain accounts controlled by the defendant.

14. Once the defendant received the victims' money in one of his accounts, the defendant would withdraw cash, use the proceeds for his own personal benefit, and transfer the money to other individuals or entities, for purposes other than what was represented to the victims.

5

Case 6:21-cr-03139-SRB   Document 1   Filed 11/16/21   Page 5 of 12

## OVERT ACTS

15. In furtherance of the conspiracy and to accomplish the object of the conspiracy, one or more members of the conspiracy committed and caused to be committed the following overt acts, including acts within the Western District of Missouri.

16. The defendant opened, maintained, controlled, and operated bank accounts, including:

    a. A personal checking account, number XX5812, and a personal savings account, number XX2355, both with SunTrust Bank and under his name, of which the defendant controlled, operated, and accessed at least account number XX5812 in May 2017, said date being approximate;

    b. A personal checking account under his name with JP Morgan Chase, number XX6232, which he opened on or about December 11, 2018, and operated and maintained until JP Morgan Chase closed it on or about February 1, 2019, said dates being approximate; and

    c. A personal savings account under his name with JP Morgan Chase, number XX1030, which he opened on or about December 11, 2018, and operated and maintained until JP Morgan Chase closed it on or about February 1, 2019, said dates being approximate.

17. On or about May 10, 2017, V1 received an email from Business Number 1 ("B1") with an invoice attached, related to payment due from V1 to B1 for legitimate goods and services rendered, and which contained wiring payment instructions with a bank account number. Later, unknown co-conspirators, who had unlawfully gained access to B1's email account on an earlier

unknown date, sent a separate email to V1, purporting to be from B1. This email contained an identical invoice, except for the fact that the wiring payment instructions related to the deposit account number had changed. The invoice now directed the payment to be made to the defendant's SunTrust Bank account, number XX5812.

18. As directed by the unknown co-conspirators through the illegitimate email, on or about May 10, 2017, V1 transferred by wire $9,000 to SunTrust Bank account number XX5812, controlled by the defendant. After the defendant received V1's proceeds in his SunTrust Bank account, on or about May 11, 2017, he withdrew at least some of the funds in cash and otherwise used the money for purposes different than what was represented to V1. The money V1 sent to the defendant's account was not used for the payment of the amount due from V1 to B1.

19. In or around October 2018, unknown co-conspirators unlawfully gained access to the email account of an employee of V2, without the consent of the employee or V2.

20. On or about December 28, 2018, V2 received an email from a business, Business Number 2 ("B2"), that V2 conducted business with, which contained an invoice for goods and services rendered. Later that same date, unknown co-conspirators sent V2 a separate email, made to appear that it was from B2, and which contained directions to V2 to change electronic payment routing information for the payment due. Specifically, this email directed V2 to transfer the payment to JP Morgan Chase account number XX6232, controlled by the defendant.

21. As directed by the unknown co-conspirators through the illegitimate email, on or about January 3, 2019, V2 transferred $49,859 from V2's bank account with US Bank to the defendant's JP Morgan Chase account, number XX6232. The money V2 sent to the defendant's account was not used for the payment of the amount due from V2 to B2.

22. After the defendant received V2's proceeds in his JP Morgan Chase account, he transferred the proceeds through cashier's checks and MoneyGram to other individuals and entities unrelated to the purpose the money was sent for. The defendant also used some of the proceeds for his own benefit.

23. On or about October 25, 2018, unknown co-conspirators gained access to the email account of an employee of B3, without the consent of the employee or B3.

24. On or about January 16, 2019, unknown co-conspirators sent an email to V3 that purported to be from B3, which requested a change in its payment method for services from check issuance to an electronic funds transfer. V3, believing it was communicating with B3, approved the change. On or about January 17, 2019, unknown co-conspirators, again acting as B3, sent directions to V3 for money to be deposited into the defendant's JP Morgan Chase account, number XX1030.

25. As directed by the unknown co-conspirators through the illegitimate email, on or about January 25, 2019, V3 made three electronic fund transfers of money to the defendant's JP Morgan Chase account, number XX1030, in the amounts of $76,544, $4,000, and $84,024, respectively. The money V3 sent to the defendant's account was deposited into the defendant's account on January 28, 2019.

All in violation of Title 18, United States Code, Sections 1343 and 1349.

## COUNT 2
### (Money Laundering Conspiracy)

26. The allegations in paragraphs 1 through 25 of this Indictment are re-alleged and incorporated by reference as if fully set forth herein.

27. Beginning on an unknown date, but at least as early as January 1, 2017, and continuing through at least January 28, 2019, said dates being approximate, in Pulaski County, within the Western District of Missouri, at a place within the special maritime and territorial jurisdiction of the United States, namely Fort Leonard Wood, on land acquired for the use of the United States and under its exclusive jurisdiction, and elsewhere, the defendant, **FRANKLIN D. HUGGINS**, and others, both known and unknown to the grand jury, did knowingly combine, conspire, agree, and have a tacit understanding with others known and unknown to the Grand Jury to commit an offense against the United States, that is:

    a. to knowingly conduct and attempt to conduct a financial transaction, which involved the use of a financial institution that was engaged in, or the activities of which affected, interstate commerce, and which involved the proceeds of a specified unlawful activity, that is, including, but not limited to, wire fraud and conspiracy to commit wire fraud, knowing that the transaction was designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of such specified unlawful activity, and that while conducting and attempting to conduct the financial transaction, knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i); and

    b. to knowingly engage in a monetary transaction by, through, and to a financial institution, affecting interstate or foreign commerce, that is a transfer of United States currency, knowing that said transaction involved criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful

9

activity, that is, wire fraud and conspiracy to commit wire fraud, in violation of Title 18, United States Code, Section 1957.

All in violation of Title 18, United States Code, Section 1956(h).

## FORFEITURE ALLEGATIONS

28. The allegation of Count 1 of this Indictment is re-alleged and fully incorporated herein for the purpose of alleging forfeiture to the United States of America of certain property in which the defendant has an interest, pursuant to the provisions of Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(2)(A), and Title 28, United States Code, Section 2461(c), and the procedures outlined in Title 21, United States Code, Section 853.

29. Upon conviction of any violation of Title 18, United States Code, Section 1349, the defendant shall forfeit to the United States any property constituting, or derived from, proceeds the person obtained directly or indirectly pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(2)(A), and Title 28, United States Code, Section 2461(c).

30. The property subject to forfeiture includes, but is not limited to, the following:

   a. <u>Money Judgment and Other Property Involved in or Traceable to the Offense</u>:

   Any interest or proceeds traceable thereto of at least $223,427, representing the proceeds obtained by the defendant, **FRANKLIN D. HUGGINS**, in that such sum in aggregate is involved in, or is derived from, proceeds traceable to the offense set forth in Count 1.

31. The allegations of Count 2 of this Indictment are re-alleged and fully incorporated herein for the purpose of alleging forfeiture to the United States of America of certain property in

which the defendant has an interest, pursuant to the provisions of Title 18, United States Code, Section 982(a)(1), and the procedures outlined in Title 21, United States Code, Section 853.

32. Upon conviction of any violation of Title 18, United States Code, Section 1956, the defendant shall forfeit to the United States any property, real or personal, constituting, or derived from, or traceable to, proceeds the person obtained directly or indirectly pursuant to Title 18, United States Code, Sections 982(a)(1).

33. The property subject to forfeiture includes, but is not limited to, the following:

    a. <u>Money Judgment and Other Property Involved in or Traceable to the Offense</u>:

    Any interest or proceeds traceable thereto of at least $223,427, representing the proceeds obtained by the defendant, **FRANKLIN D. HUGGINS**, in that such sum in aggregate is involved in, or is derived from, proceeds traceable to the offense set forth in Count 2.

## SUBSTITUTE ASSETS

34. If the property described above as being subject to forfeiture as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with a third person;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b), to seek forfeiture of any other property of the defendant up to the value of the above-forfeitable property or to seek return of the property to the jurisdiction of the Court so that the property may be seized and forfeited.

All pursuant to the provisions of Title 18, United States Code, Sections 981(a)(1), and 982, and Title 28, United States Code, Section 2461(c), and the procedures outlined in Title 21, United States Code, Section 853(p).

**A TRUE BILL**

*/s/ Monica Stone*
FOREPERSON OF THE GRAND JURY

*/s/ Casey Clark*
**CASEY CLARK**
Assistant United States Attorney

DATED: 11/16/2021
Springfield, Missouri